WILL HUNTER *v.* THE STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Instruction.*

　　An instruction which authorizes a conviction of murder upon mere proof of the killing is erroneous. *Kearney* v. *State*, 68 Miss., 239, approved.

2. SAME. *Confession. Court and jury.*

　　The court determines the competency of a confession, and, when admitted, the jury cannot rightfully fail to consider it as evidence, though, if they disbelieve the witnesses who testify to the confession, they may attach no weight to the same.

3. SAME. *Free and voluntary. Reasonable doubt.*

　　The court should not admit a confession if it entertains a reasonable doubt as to whether it was free and voluntary.

FROM the circuit court of Tunica county.

HON. F. A. MONTGOMERY, Judge.

The appellant was indicted for the murder of one Thompson. Both parties were negroes. The evidence showed, or tended to show, the following facts: Appellant was invited to a "quilting," being informed, by the party who delivered the invitation, that Thompson, between whom and appellant ill feeling existed, would be present. On his way to the entertainment,

appellant carried his Winchester rifle, and secreted it near the house where the festivities were given. When the "quilting" was over, appellant, having made an engagement to do so, offered to escort a girl home, but was interfered with by Thompson, who drew a pistol on him and took the girl from him. Appellant, with the view of carrying out his engagement, went for his gun, and, having secured it, followed Thompson and the girl, went around them, and confronted them in the road. When he did so, Thompson at once shot at appellant and ran in the direction of John Adams' house, which was seventy-five or one hundred yards away. The girl also ran, going to her home in much haste unescorted. Appellant returned Thompson's fire just before he ran, but did not hit him. After this shooting in the road, the appellant claimed to have gone at once to his own home, which was in a direction from the scene of conflict opposite to that in which Adams' house was situated. About ten or fifteen minutes after Thompson reached Adams' house, he walked out at the front of the residence and was shot and killed, no one there present seeing the party who fired the shot. On the trial, the appellant offered to introduce evidence of threats to kill him recently made by Thompson, and which threats, it was proposed to show, had been communicated to appellant before he started to the "quilting." The court below would not allow this evidence to be offered. The appellant was convicted, and appealed.

The second instruction for the state was in these words: "The court instructs the jury that if they believe from the evidence, beyond a reasonable doubt, that defendant killed deceased, while he (deceased) was standing in the door at John Adams' house, then they must find him guilty."

The second and fourth instructions asked by the defendant, and which were refused, were as follows:

"2. The court instructs the jury that although you may believe, from the evidence, the defendant confessed to W. A. Spratlin that he killed deceased, still, unless you believe, be-

yond all reasonable doubt arising out of the evidence, that said confession was made by defendant after he had been warned by the said Spratlin that said confession might or would be used against him in the trial of his cause, you will not consider said confession as any evidence against the defendant.''

''4. The court instructs the jury, although you may believe, from the evidence, that the defendant confessed to W. A. Spratlin that he killed deceased, still, unless you believe, beyond all reasonable doubt arising out of the evidence, that said confession was voluntarily made, you will not consider said confession as evidence against the defendant. And if you believe, from the evidence, that said Spratlin obtained said confession by practicing deceit on defendant, or by any artful means, or by reason of his superior intelligence over that of defendant, the defendant at the time not understanding his legal rights, you will not consider said confession as evidence against the defendant.''

*Lowe & Cochran,* for appellant.

The second instruction asked by the state, and granted, is erroneous in this, that the court invaded the province of the jury when it instructed that: '' If the jury believe from the evidence, beyond a reasonable doubt, that defendant killed deceased, while he, deceased, was standing in John Adams' house, then the jury must find him guilty.'' The court can declare the law, but not the verdict of the jury. The court could have told the jury what was their duty, or what they ought to do, if they believed, beyond a reasonable doubt, a given state of facts, but it had no authority to peremptorily order them, under any circumstances, to find the defendant guilty. Under our system of jurisprudence, the jury is the judge of the facts; the court is the judge of the law. No more can the court dictate to the jury than can the jury dictate to the court. The instruction being mandatory to find the defendant guilty, is erroneous. *Flynn* v. *The State,* 43 Ark., and cases cited; *Kearney* v. *State,* 68 Miss.; 2 Thompson on Trials, 2149.

We submit that a confession " pumped " out is not a voluntary confession. If there is a reasonable doubt as to its being voluntary, the confession should be excluded. *Williams* v. *State*, 72 Miss., 117; *Ellis* v. *State*, 65 Miss., 44. Such confession should not only be excluded on the ground of great danger of harm to defendant, but to prevent even the possibility of harm befalling him.

*Frank Johnston*, on same side.

The court erred in not permitting the defendant to explain why he carried the gun to a place near the house where the quilting party was held before the killing. In view of the peculiar character of this case, this testimony was competent and material, and should have been admitted. The defendant has been convicted wholly upon the evidence of his alleged confession, testified to by one witness. Excluding the alleged confession, there is absolutely no evidence whatever against the defendant.

The fact that defendant had previously carried his gun to this place, without being permitted to explain why he placed it there, must have operated strongly upon the minds of the jurors, and against the innocence of the defendant. It would have been inferred that he had deliberately arranged to murder the deceased, by having his gun in readiness before the deceased had done anything aggressive, and before there was any difficulty between the defendant and the deceased. This fact, standing alone, that the defendant had placed his gun in readiness before the difficulty, was a formidable circumstance to show a premeditated and malicious design to kill the deceased, and afforded a strong presumption that he shot the deceased as he stood in the doorway of John Adams' house, and is strongly corroborative of his alleged confession. On the other hand, if the accused knew that the deceased had made threats against his life, and, knowing that he would be likely to meet the deceased, had placed the gun there in order that he might use it

in self-defense and for his own protection, the presumption of malice or premeditated intention to kill the deceased would have been removed, or, manifestly, very greatly weakened in its force.

The second instruction given for the state is unusual, if not unprecedented, in this: The court, on a hypothetical state of facts, tells the jury peremptorily that they must convict. The court may instruct as to the law and advise the jury as to their duty, but it cannot tell them, on any hypothetical case, that they must find a defendant guilty of murder. The instruction is too meager in not defining a reasonable doubt, and in not defining the crime of murder. It requires a conviction if the accused "killed" Thompson. This was clearly erroneous.

Argued orally by *Frank Johnston*, for appellant, and by *Wiley N. Nash*, *attorney-general*, for the state.

WHITFIELD, J., delivered the opinion of the court.

The second instruction for the state is erroneous in telling the jury that if they believed, etc., that the defendant "killed deceased while," etc., they must find him guilty. It authorized conviction upon the proof of "killing" merely, and is expressly condemned in *Kearney* v. *State*, 68 Miss., at p. 239. There was no error in refusing the second and fourth instructions asked by the defendant, as drawn. The court determines the competency of a confession—as being voluntary—and the jury cannot then disregard it or fail to consider it as evidence. All competent testimony they must consider and weigh. If they believe the witnesses testifying to the confession are testifying falsely, they can disbelieve such witnesses, as to that, and attach no weight to the confession. But they are bound to weigh and pass upon all testimony held competent by the court. We understand the court to have held this confession competent. As we reverse the case upon other grounds, we intimate now no opinion as to its competency. The court

should not admit a confession in evidence if it entertains a reasonable doubt as to whether it was free and voluntary.   *Ellis* v. *State*, 65 Miss., 44; *Williams* v. *State*, 72 *Ib.*, 121, 122.

The third instruction asked by the defendant should have been given, and the defendant should also have been allowed to testify as to the threats alleged to have been made against his life, and as to his purpose in carrying the gun to the place where he put it.

*Reversed and remanded.*